UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 24-CR-356 (CRC) |
| : | |
| SAMUEL GUIZIO, : | |
| : | |
| Defendant : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Samuel Guizio has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (Disorderly or Disruptive Conduct in a Capitol Building or Grounds) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Guizio to 14 days' incarceration on Count Three and 18 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I.   **Introduction**

The defendant Samuel Guizio, a former employee with the Kentucky Disability Determination Services office, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential

election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Guizio pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building or Grounds) and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). The government's recommendation is supported by the defendant's decision to spend two hours on the Capitol grounds, despite seeing—and photographing—police who were desperately trying to contain the rioters that day.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Guizio's crime support a sentence of 14 days' incarceration, 18 months' supervised release, 60 hours of community service, and $500 in restitution in this case. Given Guizio's decision to evade and ignore police officers, probation is insufficient to impress upon the defendant the gravity of his offenses and the importance of adhering to the rule of law.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

II.     **Factual and Procedural Background**

    A.  **The January 6, 2021 Attack on the Capitol**

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense, ECF No. 6 at ¶¶ 1-7.

    B.  **Defendant Guizio's Role in the January 6, 2021 Attack on the Capitol**

Samuel Guizio left Lexington, Kentucky on January 5, 2021 and arrived in the Washington, D.C. area. Presentence Report, ECF No. 10 at ¶¶ 19 ("PSR"). The next morning, he attended the "Stop the Steal" rally in support of President Donald Trump. *Id.* Guizio then walked with a crowd towards the Capitol, approaching the building from the west side, and climbed the stairs to the building's "Upper West Terrace" immediately surrounding the Capitol. *Id.* at ¶¶ 19-20.

Once on the Upper West Terrace, Guizio entered the Capitol through the building's Senate Wing Doors. PSR at ¶¶ 20. Guizio entered at 3:12:19 PM EST, looked around, and left at 3:12:55 PM EST. *Id.*



*Image 1: Guizio (circled in orange) enters in a Senate Wing Corridor door*

3

Though Guizio was in the Capitol building for only a few seconds, he remained on the Capitol grounds for far longer: approximately two hours, by his own account. *See* PSR at ¶ 20.



*Image 2: Guizio (circled in orange) on the Upper West Terrace of the Capitol Building*

According to a subsequent interview, Guizio left the grounds only when a line of police moved to clear the rioters from the area. Before he did so, however, Guizio took a photo of the line of officers:



*Image 3: Photo taken by Guizio of police at the Capitol*

4

### C. The Charges and Plea Agreement

On August 6, 2024, the United States charged Guizio by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5014(e)(2)(D) and (G). On September 19, 2024, pursuant to a plea agreement, Guizio pleaded guilty to Counts Three and Four of the Information, charging him with violations of 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building or Grounds) and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). By plea agreement, Guizio agreed to pay $500 in restitution to the Architect of the Capitol.

## III. Statutory Penalties

Guizio now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days' incarceration, 18 months' supervised release, 60 hours of community service, and $500 in restitution in this case.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while

staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Guizio's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Guizio, the absence of violent or destructive acts is not a mitigating factor. Had Guizio engaged in such conduct, he would have faced additional criminal charges.

The most important factor in this case is the time Guizio spent on Capitol grounds. Though he spent less than a minute in the building, by his own admission, he spent another two hours on the Capitol grounds themselves, moving only when a line of officers worked to clear the area. At this time, every person on the grounds was impeding the work of the police to secure the Capitol, and the fact that he remained so long after observing the chaos in the building itself that he was more than a curious bystander: he supported the effort to disrupt the work of law enforcement, and Congress itself.

### B. Guizio's History and Characteristics

The Defendant was raised in a stable family, has no criminal record, and reports no history of abuse. PSR ¶¶ 31, 33. In fact, Guizio shares a "very close relationship" with his parents and brother, and speaks with them every few days. *Id.* at ¶ 33. He has experienced some limited anxiety, but this has "dissipated" as he has gotten better at expressing his emotions, and reports no history of drug dependency. *Id.* at 40-41. The relative stability of Guizio's upbringing makes his conduct on January 6, 2021 all the more disappointing. It also means that his actions cannot be explained away by environmental forces outside his control.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-CR-233 (ABJ) (D.D.C. June 9, 2023), Tr. at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was [was] an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.").

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B)-(C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." Statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-41 (D.D.C. Oct. 13, 2021) Tr. at 37.

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The defendant has never expressed remorse for his actions. FBI personnel interviewed Guizio less than a month after the attack on the Capitol. Guizio described his actions that day but appears to have expressed no remorse for them. Nor, other than pleading to two counts in this case, has Guizio expressed any remorse since then. As such, any statements of remorse now should be treated highly skeptically. *See United States v. Matthew Mazzocco*, 1:21-cr-54 (TSC) (D.D.C. Oct. 4, 2021) at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

Given the persistent threat of political violence in America, and because Guizio has not shown any contrition for joining the attack on the Capitol, a meaningful deterrent is necessary to ensure that Guizio does not repeat his crime.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Guizio based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

The sentencing factors require the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Heinl*, 23-CR-370 (EGS), the defendant, Jennifer Heinl—like Guizio—trespassed over the Capitol Grounds' restricted perimeter and up the Capitol steps. Sentencing Memorandum at 3, *United States v. Heinl*, 1:21-CR-370 (D.D.C. Feb. 28, 2022), ECF No. 35. Like Guizio, Heinl filmed or photographed what she saw. *Id.* at 3. Like Guizio, Heinl entered the Capitol through the Senate Wing Corridor. Heinl spent more time in the Capitol—45 minutes—than did Guizio. *Id.* at 8-12. But there is no evidence at sentencing of her actions on the grounds after leaving the building. By contrast, Guizio said he spent two hours on what was the building's Upper West Terrace. Simply by the duration of his time on the grounds, Guizio's presence was more disruptive that Heinl's. Heinl was sentenced to 14 days' intermittent incarceration, two years' probation, and $500 in restitution. Judgment, *United States v. Heinl*, 1:21-CR-370 (D.D.C. June 21, 2022), ECF No. 43. Guizio deserves a similar sentence.

In *United States v. Crase*, 21-CR-82 (CJN), the defendant Dalton Crase—like Guizio—traveled up the steps of the U.S. Capitol on January 6, 2021. Sentencing Memorandum at 4, *United States v. Crase*, 21-CR-082 (CJN) (D.D.C. Jan. 6, 2022), ECF No. 47. Both Crase and Guizio were aware they were not supposed to be there: Guizio because he remained as police tried to clear the area, Crase because his companion told him "this is not right." *Id.* at 11-12. Yet both seemed

9

excited by or proud of their actions: Guizio because he photographed police, Crase because he posed for several excited photographs in the building. *Id.* at 13-14. Yet when interviewed by the FBI, Crase was immediately remorseful, and admitted that "I was breaking the law by being in the Capitol building but it didn't register with me." *Id.* at 15. Guizio simply described his actions to FBI personnel, never acknowledging the wrongfulness of his conduct. Crase was sentenced to 15 days' intermittent confinement, 36 months' probation, 60 hours of community service, and $500 in restitution. Judgment, *United States v. Crase*, 21-CR-082 (CJN) (D.D.C. Jan. 25, 2022), ECF No. 62. Guizio deserves a similar sentence.

In *United States v. Uberto*, the defendant—Thomas Uberto—filmed or photographed the scene, just as Guizio did. Sentencing Memorandum at 3, *United States v. Uberto*, 22-CR-7 (TSC) (D.D.C. Dec. 2, 2022), ECF no. 36. Like Guizio, the defendant saw signs of chaos that made it obvious he was not supposed to be there. *Id.* at 4. And like Guizio, Uberto entered the Capitol through the Senate Wing Corridor. But while Uberto spent 13 minutes in the Capitol, Guizio spent two hours just outside it. Uberto was sentenced to ten days' incarceration with no term of supervised release and $500 in restitution. Judgment, *United States v. Uberto*, 22-CR-7 (TSC) (D.D.C. Feb. 6, 2023), ECF no. 44. Guizio deserves a similar sentence.

Finally, Guizio traveled to D.C. with defendant David Smither, who pleaded guilty to the same two petty offenses and received a sentence of six months' probation. *United States v. Smither*, 24-CR-15 (JMC). Although Smither entered the Capitol building for 13 minutes, which is more time than Guizio, he did not say that he spent two hours on restricted Capitol grounds, as Guizio did. Sentencing Memorandum at 3–4, *Smither*, ECF no. 21. Guizio did not leave the Capitol grounds until a police line formed and started to sweep rioters from the area. Thus, a brief term of incarceration for Guizio would not create an unwarranted sentencing disparity with Smither. In

any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012); *see also United States v. Alford*, 89 F.4th 943, 954 (D.C. Cir. 2024) ("some degree of sentencing disparity . . . is only one factor among many that district courts must balance when sentencing"). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently— differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

V.     **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Guizio must pay $500 in restitution, which reflects in part the role Guizio played in the riot on January 6.[4] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* Guizio's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

## VI.   Fine

The defendant's convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G) subject him to a statutory maximum fine of $5,000 for each count. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1). Here, the Presentence Report does not show that the defendant is unable to pay a fine, thus pursuant to the factors outlined in 18 U.S.C. § 3572(a), the Court has authority to impose a fine. 18 U.S.C. § 3572(a)(1).

---

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VII. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 14 days' incarceration, 18 months' probation, 60 hours of community service, and $500 in restitution. Such a sentence recognizes the factors that make Guizio's crimes important: his decision to evade police, his decision to enter the Capitol through a shattered window, and his decision to film police, both as he entered and left the building. Such a sentence also protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Guizio's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   s/ *Brendan Ballou*
Brendan Ballou
Special Counsel
DC Bar No. 241592
United States Attorney's Office
601 D Street NW
Washington, DC 20001
(202) 431-8493
brendan.ballou-kelley@usdoj.gov